Etans, J. (sitting for Harper, J.)
This ease was decided by Harper, J., sitting for Chancellen De Sanssuve, at Coosawhatchie, in January, 1833. On examining the decree, there is no ground for questioning its correctness, as to the defendants, John Porteus and Dr. Fuller; but so much of the decree as relates to the rights of the defendant, Arthur G. Rose, it is thought, is erroneous, and it is my duty to assign the reasons for that opinion. It is very clear, as the presiding Judge says in his decree, that the “case was very imperfectly presented on the Circuit;” an important feature in the case, and that which probably led to the error in the decree, was not brought to the view of the Judge, viz: that the deed from the sheriff to Rose, was recorded in the Register’s Office of Beaufort district. The bill was filed to foreclose a mortgage from John Porteus to E. W. Barnwell. The mortgage was never recorded. Sub *172 seqnently to the date of the mortgage, the sheriff levied on a part of the mortgaged premises, and sold the same under a fieri facias to the defendant, A. G. Rose, who being the oldest judgment creditor, did not pay the money, but entered on his execution a credit for the amount of his bid. The deed from the sheriff to Rose was recorded in the Clerk’s office of Beaufort district, but not until the expiration of six months. On this statement of facts two questions present themselves. 1st. Does the deed of the sheriff to Rose, being recorded, take precedence of the plaintiff’s unrecorded mortgage. 2d. Has Rose’s judgment against Porteus a preference to the plaintiff’s mortgage, under the 45th section of the Act of 1785.
Rose’s deed not having been recorded within six months, can acquire no preference under the Act of 1785, commonly called the County Court Act. But fey the Act of 1698, P. L. page 3, “that sale, conveyance or mortgage oflands or tenements which shall be first recorded in the Register’s office in Charleston, shall be taken, deemed, adjudged, allowed of, and held to be the first sale, conveyance or mortgage, and bo good firm, and substantial in all Courts of judicature Within South Carolina.’A At ¡¡.990-| the date of this Act, *Charleston was the principal settlement in J the State. It was the seat of government, and the only place of judicature. This act speaks only of deeds recorded in Charleston, yet I apprehend when other offices for registering of deeds were established, the provisions of the Act, apply to deeds recorded in such offices, as well as to those recorded in Charleston, ffiy the 45th section of the County Court Act, it is declared that “ no conveyance of lands, tenements, or hereditaments shall pass, alter or change from one person to another, any estate of inheritance in fee simple, or any estate for life, or, lives, nor shall any greater or higher estate be made, or take effect, in any person or persons, or any use thereof, by bargain, sale, lease, and release, or other instrument, unless the same shall be made in writing, signed, sealed and recorded in the Clerk’s office of the county where the-land mentioned to be passed and granted shall be, in manner following, viz.: If the persons who shall make and seal such instrument in writing, shall be resident within the State; then the same shall be recorded withiug six months from the signing, sealing and delivery.” And if any deed shall not be recorded within the time mentioned in the Act, “ such deed or other conveyance shall be legal and valid tíjjtonly as to the parties themselves and their heirs, but shall be Void and incapable of barring the rights of Hah persons, claiming as creditors, or under>subsequent purchases, recorded in the manner prescribed by the Act.” J Now, although by the Acts of the 12th and 17th of March, 1785, the whole State is laid off into counties, yet practically, those acts never went into operation in the districts of Georgetown, Charleston and Beaufort. But by the Act of 1789, P. L. 485, it was declared sufficient to record deeds in the Register’s office where the land lay, and where the County Courts were not established. It is manifest that neither the plaintiff nor Rose has complied with this Act, and but for the Act of 1698, P. L., p. 3, the unrecorded mortgage would take precedence of Rose’s deed; but as Rose has recorded his deed, he has acquired a preference in pursuance of the Act of 1698.
On the 2d ground, it is contended that Rose, being a judgment creditor, is entitled to preference over the plaintiff’s mortgage, under the *173 clause of the Act of 1785, above recited. It is exceedingly difficult to say what creditors are meant by the act, whether all who come under that description, or only such as claim under some instrument of writing, which may be recorded. If this were *now a new question, I r*ooi should have great difficulty in making up an opinion, but I am L relieved by former adjudications from any difficulty on this point, so far as it relates to this case. In the case of Ash v. Ash, 1 Bay, 305, Chiefs Justice Rutledge, says, “ a mortgage is not void by not being on record. The only risk the mortgagee ran, was the chance of another deed from the seller (Berwick) for the same land, being put on record firstand accordingly in the case of Ash v. Livingston, 2 Bay, 80, the money arising from the sale, was recovered from the judgment creditor to whom it had been paid, in a suit brought by the executor of the morty gagee. It is true that the mortgage in this case was anterior to the Act of 1785, and it may be, was not within its provisions ; yet the Court lay no stress on this circumstance, and the principle is laid down broadly, that as to a judgment creditor junior to the mortgage, the latter is good without recording. In the case of Penman v. Hart, 2 Bay, 25, the Court appear to have decided on the grounds that the provisions of the County Court Act did not extend to cases arising in those parts of the State where the County Court system had never gone into practical operation; yet the case of Ashe v. Ashe is referred to, and its authority not questioned. So far as I have been able to ascertain, the principle of that case has been regarded as the settled law of the land for many years. — I speak from my own experience when I say twenty years at least. Deeds in fee simple rest on the same footing as mortgages in this particular, and if the latter are to be postponed in favor of creditors, so also must the former. If this doctrine were now reversed, there is no conjecturing the consequences in unsettling the titles of the people of this State to their lands. In Ravenal & Smith v. Smith, 1 M‘C. Ch. Rep. 148, Judge Nott, speaking of the case of Ashe v. Ashe, says, “I must confess I never have been perfectly satisfied with that decision, but it has been received and acted on as the law for upwards of thirty years, and ought not to be questioned.” Indeed, so well did I suppose the question to be settled, that an unrecorded mortgage or deed, if free from all taint of fraud, was good against one claiming as a creditor merely without prior lien, that I was somewhat startled when I heard the question gravely made and argued. If the principle be wrong, let it be altered for the future by the legislature; but it is at all times unsafe for a Court to reverse a decision, although it may have been wrongly decided originally, which has been acted on so long as to become a rule of property.
*It is therefore Ordered and decreed, that unless the said John Porteus shall, on or before the 1st Monday in October next, pay L up the amount due on his said mortgage, the Commissioner shall, on the ' said day, or at some subsequent public sale day, sell all the land described in the mortgage mentioned in the bill, except so much thereof as is included in the sheriff’s deed to A. G-. Rose. The sale to be on a credit of six months,- with a mortgage and personal security. The costs to be paid out of the proceeds of the sale, and the balance, or so much as will satisfy the mortgage, to be paid to the plaintiffs when collected.
Johnson, J., and O’Nealh, J., concurred.